IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| United States of America | : |
| | : |
| v. | : 1:20-cr-260(MSN)(RDA) |
| | : |
| Didier Kindambu, | : |
| | : |
| Defendant. | : |

**REPLY TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO RECONSIDER DETENTION ORDER**

Defendant Didier Kindambu, by counsel, briefly but respectfully replies to the Government's memorandum in opposition (Dkt. #34) to his renewed request to be released, under conditions the Court sees fit, on the basis of his coronavirus diagnosis.

The facts of Mr. Kindambu's case and the applicable law are set forth fully in his motion and the Government's opposition papers. Both Mr. Kindambu and the Government agree that he committed a bank fraud, a serious but also nonviolent crime, and acknowledge that upon the entry of his guilty plea, he will then bear the burden of demonstrating that he is not likely to flee. In sum and substance, the parties disagree only about how large the risk of flight is in this case, and on how that risk should be balanced against Mr. Kindambu's recent and unfortunate coronavirus diagnosis.

Both Mr. Kindambu's aged and infirm father and also his young children live in this jurisdiction; and, given his estrangement from his wife, he is responsible for their care. *See* Pretrial Services Report of October 21, 2020 (Dkt. #11) at 1. His seriously taken responsibilities as a son and a father are alone sufficient to firmly anchor him to

1

this district.  They are enough to keep him from fleeing, abandoning vulnerable family members, and leading life as a wanted fugitive, only to avoid a prison sentence which he reasonably hopes, through his full cooperation with the Government, to be quite substantially less than the circa four years advised by the Guidelines.

  While acknowledging that Mr. Kindambu is a legal immigrant, an international businessman, and a man of means, counsel believes the Government's continued focus upon his access to small aircraft and his *de minimis* student flight training is misplaced. (*See* Dkt. #34 at 8-9.)  Any attempt by Mr. Kindambu to fly solo across the Atlantic to Africa in a propeller plane would end in his certain and miserable death alone at sea, both because of these planes' very short ranges, and his sharply limited beginner's airmanship skills.

  Weighed against the risk of flight, which in the context of his family obligations is quite remote, are Mr. Kindambu's coronavirus diagnosis and multiple comorbidities for this deadly disease:  his age, race, sex, high blood pressure, heart disease and diabetes, *see* Dkts. 11 and 34.  While the infirmary at the Alexandria Detention Center states that Mr. Kindambu complained of no coronavirus symptoms, he has indeed complained of them to counsel.  With no disrespect to the best efforts of the good doctors and nurses at that infirmary, certainly none of us, if we were diagnosed with coronavirus, would opt to receive treatment at a jail and not, say, Georgetown University Hospital.  Facing a deadly disease, Mr. Kindambu understandably seeks access to the best medical care he can afford.

No one would seriously suggest releasing a dangerous defendant facing a murder charge, for example, on the basis of coronavirus. But the courts have released defendants facing drug, gun, and even child pornography charges because of their comorbidities and just the <u>threat</u> of coronavirus.[1] So, too, have courts granted compassionate release to prisoners serving sentences for drug, gun possession, and child porn charges who contracted coronavirus in custody.[2] This new and growing body of persuasive federal case law, including decisions from fellow district courts within the Fourth Circuit, indicates that the presence of coronavirus along with other health conditions that increase the risk of succumbing to the virus are justifiable grounds for release from detention.

It in no way minimizes the seriousness of bank fraud to also state that it is not as grave as crimes involving drugs, guns, and child obscenity. And it would be an avoidable tragedy if such a white-collar criminal case accidentally resulted in a defendant's death.

Counsel respectfully suggests that this is the gravamen of the matter before the Court, whether addressing the Government's fear of flight through incarceration, rather than a very large bond and pervasive electronic monitoring for example, is worth risking death in a bank fraud case. We submit that, weighing the equities, it is not.

---

[1] *See United States v. Sturmer*, 458 F.Supp.3d 338, 342–43 (D.Md. 2020); *United States v. Childs*, No. 8-19-cr-00181-DCC-7, 2020 WL 1910097, at *3-4 (D.S.C., April 20, 2020); *United States v. McDuffie*, 451 F.Supp.3d 281, 287 (S.D.N.Y. 2020); *United States v. Harris*, 451 F.Supp.3d 64, 71 (D.D.C. 2020); *United States v. Garraway*, No. 19-CR-857-04 (NSR), 2021 WL 75662, at *3 (S.D.N.Y. Jan. 7, 2021); and *United States v. Gilbert*, No. 20-404, 2021, WL 63267, at *5 (E.D.Pa. Jan. 7, 2021).

[2] *See United States v. Arreola-Bretado*, 445 F.Supp.3d 1154, 1159 (S.D.Cal. 2020); *United States v. Fischman*, No. 16-cr-00246-HSG-1, 2020 WL 2097615, at *2 (N.D.Cal. May 1, 2020); *United States v. Ramirez*, No. 18-20676, 2021 WL 168594, at *5 (E.D.Mich. Jan. 19, 2021); and *United States v. Watkins*, Crim. No. CCB-09-534, 2021 WL 165145, at *2 (D.Md. Jan. 19, 2021).

Other courts have seen fit to release defendants and prisoners facing or serving sentences for dangerous and awful crimes, due to coronavirus or even just the threat of it to a person with comorbidities. Perhaps this Court can see its way through to exercise either its discretion on behalf of a defendant under the Bail Reform Act, or its inherent power to grant compassionate release to a prisoner, to grant a heavily bonded and electronically-monitored supervised release to family man, admittedly guilty of one count of bank fraud yet cooperating fully with the Government, who suffers from coronavirus, and is at great risk of a bad result due to his age, race, sex, hypertension, heart disease and diabetes.

WHEREFORE, Mr. Kindambu respectfully requests that this court again reconsider its detention determination and please release him, under any such conditions as the Court deems appropriate.

Respectfully submitted,

By:   /s/

Kevin T. Carroll (VSB: 95292)
Wiggin and Dana LLP
800 17th Street, NW, Suite 520
Washington, DC 20006
kcarroll@wiggin.com
Phone: 202-800-2475
Facsimile: 212-551-2888
Counsel for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2021, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing to the following:

>Matthew B. Burke, Esq.
>Assistant United States Attorney

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

>/s/
>Kevin T. Carroll (VSB: 95292)
>Attorney for Defendant