IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:20-cr-260 (RDA) |
| | ) | |
| DIDIER KINDAMBU, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Didier Kindambu's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion"). Dkt. 75. Having considered the Motion, the attached Exhibits, the Government's Opposition (Dkt. 82), and Defendant's Reply (Dkt. 84),[1] and for the reasons that follow, it is hereby ORDERED that Defendant's Motion for Compassionate Release (Dkt. 75) is DENIED.

I. BACKGROUND

On January 28, 2021, Defendant pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 (2). On October 21, 2021, this Court sentenced Defendant to 33 months in prison with a two-year term of supervision, along with a $100 special assessment, a $15,000 fine, and ordered a plan requiring Defendant to repay $2,501,753 in restitution to Bank of America upon release. Dkt. 59. This sentence was below the United States Sentencing Guidelines range, which was assessed at a range of 41 to 51 months, as the Court granted the Government's 5K1.1 Motion for a Downward Departure. Defendant is scheduled to be released on February 20, 2023. Dkt. 75, Ex. D.

---

[1] It appears that Defendant filed his reply twice, once at Dkt. 83 and again at Dkt. 84.

On October 13, 2022, Defendant requested that the Bureau of Prisons bring a motion on his behalf pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 75 at 2. That request was denied on October 28, 2022, and defense counsel received the denial of that request on December 6, 2022, the day after Defendant filed the instant Motion. Dkt. 77.

## II. ANALYSIS

Defendant requests that, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court release him from detention. He asserts that he has exhausted his administrative remedies because thirty days have passed since his facility's warden received his request for the BOP to bring a motion on his behalf. Dkt. 75 at 2. Defendant's request, which was made on October 17, 2022, was denied on October 28, 2022. Dkt. 77 at 3. He does not appear to have appealed the denial of his request. Regardless, 30 days have passed since the warden received Defendant's request pursuant to 18 U.S.C. § 3582(c)(1)(A), and recent authority from the Fourth Circuit makes clear that is all that is required to make Defendant's request ripe for review. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.").

Having determined that Defendant has satisfied the exhaustion requirement, the Court must next determine whether "extraordinary and compelling reasons" warrant Defendant's release. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). However, the First Step Act, the statute authorizing courts to consider motions for compassionate release like the one Defendant brings, states that release is

appropriate in "extraordinary and compelling" circumstances. 18 U.S.C. § 3582(c)(1)(A). The text of the statute does not define the term, however, and Congress instead delegated to the United States Sentencing Commission ("the Sentencing Commission") the responsibility of defining the scope of that phrase. *McCoy*, 981 F.3d at 276. Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Sentencing Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Further, the Sentencing Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then "extraordinary and compelling reasons exist" if the defendant's medical condition, age, family circumstances, or other reason justify such release. U.S.S.G. § 1B1.13, cmt. n.1. In weighing the danger the defendant poses to the community, courts are directed to consider a number of factors, including "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim[;]" "the weight of the evidence against the person;" "the history and characteristics of the person[;]" and "the nature and seriousness of the

danger to any person or the community that would be posed by the person's release."  18 U.S.C.
§ 3142(g).

After the First Step Act's enactment, many district courts, including this Court, have
determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n.1 "provide[ ] helpful guidance,
but . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and
compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)."  *United States v.
Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp.
3d 573, 582 (M.D.N.C. 2019)) (citing *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D.
Va. 2020) and other cases).  To be sure, § 3582(c)(1)(A) "requires [ ] that sentence reductions be
consistent with 'applicable policy statements.'"  *McCoy*, 981 F.3d at 281 (quoting 18 U.S.C. §
3582(c)(1)(A)).  But there remains "no 'applicable' policy statement governing compassionate-
release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result,
district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release
that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *United States
v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that
extraordinary and compelling reasons exist based on facts and circumstances other than those set
forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) . . . ."  *Redd*, 444 F. Supp. 3d at 726.  Accordingly, this
Court will treat the § 1B1.13 cmt. n.1(A)-(C) factors as a guide, but not as an exhaustive list of
circumstances that could justify compassionate release.[2]  *See also United States v. Jackson*, No.

---

[2] The *McCoy* court noted, however, that § 1B1.13 "remains helpful guidance even when
motions are filed by defendants."  981 F.3d at 282 n.7.  In the wake of *McCoy*, this circuit continues
to consult § 1B1.13 for compassionate release motions.  *See, e.g., United States v. Trotman*, 837
F. App'x 187, 189 (4th Cir. 2020) (per curiam); *United States v. Adamson*, 831 F. App'x 82, 83
(4th Cir. 2020) (per curiam); *United States v. Nabaya*, No. 3:17-cr-3, 2021 WL 54361, at *6 (E.D.

3:17-cr-29-2, 2021 WL 1723653, at *1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

Defendant asserts that his circumstances warrant release.  He argues that the conditions at his prison are "taking an immense toll" on his health.  Dkt. 75 at 2.  Defendant primarily focuses on the fact that he has Type II diabetes and has been unable to eat a diet that can help manage that condition.  *Id.* at 2-3.  Evidently, the quality and type of food at FCI Allenwood routinely "spikes" his blood sugar, and the only medical solution is to "multiply [Defendant's] diabetic medication." *Id.* at 4.  Defendant has apparently began choosing to "not eat anything at all" in response and has lost "nearly thirty pounds" as a result.  *Id.*  Defendant also points to the fact that his status as a diabetic makes him more susceptible to the COVID-19 virus and that he has a family history of severe "diabetes-related complications."  *Id.* at 6.  Finally, Defendant argues that his "pristine record" while in prison, "lack of criminal history[,]" and the fact that he has "already served the majority of his sentence" weigh in favor of his early release.  *Id.* at 7-10.

Having an illness—even a relatively severe, long-term condition like diabetes—does not generally qualify as an "extraordinary and compelling reason" for compassionate release.  Indeed, "[i]t is generally true that chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."  *United States v. Molina*, Criminal No. 3:15-cr-31, 2021 WL 1323402, at *2 (E.D. Va. April 8, 2021).  That is why courts routinely deny § 3582 requests from prisoners who suffer from diabetes, even when they are experiencing other illnesses alongside diabetes.  *See, e.g.*, *United States v. Nabaya*, Criminal No. 3:17-cr-3, 2021 WL 54361 (E.D. Va.

---

Va. Jan. 6, 2021); *United States v. Prater*, No. 3:13-cr-133, 2021 WL 54364, at *3 (E.D. Va. Jan. 6, 2021); *Perkins v. United States*, No. 2:18-cr-177, 2020 WL 7364222, at *2 (E.D. Va. Dec. 15, 2020); *United States v. Reid*, No. 2:02-cr-172-7, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020).

Jan. 6, 2021) (denying motion for compassionate release from defendant who purportedly had spots on his left lung and diabetes).

There are limited occasions where an inmate's health circumstances may justify release under 18 U.S.C § 3582(c)(1)(A).  For example, health conditions may be "extraordinary and compelling" if they "substantially diminish [a Defendant's] ability to provide self-care within the environment of a correctional facility." *United States v. Mumford*, 544 F. Supp. 3d 615, 618 (E.D. Va. 2021) (quoting U.S.S.G. § 1B1.13) (cleaned up).[3]  But for health conditions to justify a compassionate release, a defendant must show they are particularly severe and render him unable to provide self-care. *See United States v. Coleman*, No. 3:17-cr-8, 2020 WL 5016967, at *3 (W.D. Va. Aug 18, 2020) (inmate with limited vision who could not climb stairs and had to use a bottom bunk did not show severity of condition to warrant release); *United States v. Casey*, No. 1:06-cr-71, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019) (limited mobility and inability to climb stairs insufficient to show severity warranting release).

Recently, courts have recognized that the COVID-19 pandemic poses additional health risks to individuals with certain conditions.  As a result, various courts, including this Court, have found it appropriate under § 3582 to release prisoners who show an acute susceptibility to COVID-19.  *See, e.g.*, *United States v. Gargan*, Criminal No. 1:20-cr-110, 2022 WL 5101724 (E.D. Va. Oct. 4, 2022) (finding that defendant had established "extraordinary and compelling reasons" justifying his release by showing a variety of health conditions justifying his compassionate

---

[3] This does not appear to be a consensus among federal courts, even in this circuit. *See United States v. Clark*, No. 3:13-cr-163, 2019 WL 1052020, at *1 (W.D.N.C. Mar. 5, 2019) (rejecting compassionate release request from defendant who had "declining health, diabetes, stage-3 kidney failure, and back issues . . . .").  Indeed, other courts have held that "poor medical care and unpleasant living conditions" may not be "extraordinary and compelling reasons" justifying release.  *United States v. Alvarez*, Case No. 14-cr-80110, 2022 WL 16856260, at *6 (S.D. Fl. Nov. 10, 2022).

release).  In the context of COVID-19, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows *both* a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 832, 841 (E.D. Va. 2020) (emphasis added).

As the circumstances related to COVID-19 have developed since early 2020, so has the case law interpreting whether an inmate's susceptibility to COVID-19 constitutes "extraordinary and compelling reasons" justifying release.  For example, some courts in this district have held that an inmate's successful recovery from a prior bout with COVID-19 militates against the argument that he is particularly susceptible to COVID-19.  *United States v. Freeman*, Criminal No. 2:88-cr-76-2, __ F. Supp. 3d. __, 2022 WL 2967056, at *9 (E.D. Va. July 27, 2022); *United States v. Burale*, Criminal No. 2:11-cr-34-13, 2022 WL 1439663, at *5 (E.D. Va. May 6, 2022). And others have noted that a vaccinated inmate has "little, if any risk of contracting or suffering serious illness from COVID-19." *United States v. Aqid*, 555 F. Supp. 3d 279, 282 (E.D. Va. 2021); *see also United States v. Smith*, Criminal No. 3:15-cr-101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) ("[B]ecause the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus.").

Defendant primarily focuses on the inadequate nutrition he has received at FCI Allenwood. *See* Dkt. 75 at 3-7 (describing his difficulties maintaining a diet suitable to manage his Type II Diabetes).  From his representations, it does appear that he is undergoing numerous physical difficulties because of the unsuitable prison diet.  It is particularly alarming that Defendant has at times had to resort to eating nothing at all to manage his blood pressure.

Defendant has a remedy for his grievances about the nutritional offerings at FCI Allenwood—but it is not that his inadequate diet is an "extraordinary and compelling reason" justifying release under § 3582.  The Supreme Court has held that "prison officials must ensure that inmates receive adequate food."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  And the Fourth Circuit, like many other circuits, has indicated that "this duty includes an obligation to provide a medically appropriate diet when necessary."  *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016) (citing cases from Sixth, Seventh, and Tenth Circuits holding the same).  This means that to comply with the Eighth Amendment, a prison must "provide some food that the . . . prisoner is able to eat without compromising his health."  *Id.* at 233-34.  But the requirements of the Eighth Amendment "are not applicable to the compassionate release analysis under Section 3582(c)."  *United States v. Hartley*, Criminal No. 5:13-cr-46, 2020 WL 5550394, at *1 (W.D.N.C. Sep. 16, 2020) (collecting cases); *see also United States v. Vo*, Criminal No. 7:19-cr-18, 2020 WL 6273432, at *3 n.1 (W.D. Va. Oct. 26, 2020) ("[A] motion for compassionate release is not the appropriate vehicle for Eighth Amendment claims.").

The diet that Defendant is receiving at FCI Allenwood is not material to the issue that is currently before the Court.  Rather, what matters is whether Defendant's chronic condition is being "properly treated[,]" or whether it is not being adequately treated and is thus "so severe as to provide an extraordinary and compelling reason for a reduction in . . . sentence."  *United States v. Chapman*, Criminal No. 4:07-cr-22, 2021 WL 1896967, at *3 (E.D. Va. May 11, 2021).  While the Court recognizes that indeed diet is part and parcel of Defendant's ability to manage his Type II Diabetes, he has also indicated that medical professionals at FCI Allenwood have prescribed him medication "to try and compensate" for the differences in his prison diet.  Dkt 75 at 5.  Additionally, Defendant has not shown that his Type II diabetes is not being "properly treated[,]"

as his brief acknowledges the various measures that medical officials at FCI Allenwood have taken to manage his diabetes.  *Chapman*, 2021 WL 1896967, at *3.  Rather, his brief shows that, while the food at FCI Allenwood makes it more difficult for him to manage his diabetes and the associated symptoms, the medical professionals there have taken steps to adjust his medication. Accordingly, despite the difficulties Defendant has encountered in managing his Type II diabetes because of the diet at FCI Allenwood, his grievances about the nutritional offerings there are not relevant to the Court's analysis here.

The fact that Defendant suffers from Type II diabetes is not sufficient on its own to warrant release pursuant to § 3582.  Medical conditions must be "serious" to "constitute extraordinary and compelling reasons for compassionate release."  *United States v. Zinner*, Criminal No. 4:17-cr-3, 2022 WL 35923, at *3 (E.D. Va. Jan. 4, 2022).  While Type II diabetes is indeed a difficult, lifelong illness to manage, it does not rise to the same level of seriousness as other illnesses that that have supported release under § 3582.  For example, the defendant in *Mumford* not only had Type I diabetes, but also suffered from hypertension, required hemodialysis three times a week, and had a renal disease that was deemed a "terminal illness with an end-of-life trajectory of five (5) to ten (10) years."  544 F. Supp. 3d at 617-18.  There is no indication that Defendant's Type II diabetes is terminal; indeed, he has lived with it since 2010.  Dkt. 75 at 3.  And Defendant does not require intensive treatment like hemodialysis multiple times a week.  In sum, simply having a chronic illness like Type II diabetes is insufficient to warrant compassionate release.  *See Nabaya*, 2021 WL 54361, at *5 (defendant's "asserted health conditions [diabetes and a spot on his lung], without more, do not persuade this Court to grant compassionate release"); *Feiling*, 2020 WL 5047064, at *5 (finding that defendant's medical conditions, "Type II diabetes, hypertension, sleep apnea, metabolic syndrome, high cholesterol, gastroesophageal reflux disease, Dyupuytren contracture,

9

and narcolepsy with cataplexy[,]" standing alone, were not "extraordinary and compelling reasons").[4]

Defendant has also not shown that his Type II diabetes, when combined with the current backdrop of the COVID-19 pandemic, warrants his release.  It is true that as a Type II diabetic, Defendant is at "high risk" for severe illness from COVID-19.  *United States v. Beahm*, Criminal No. 1:05-cr-249, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020).  However, Mr. Kindambu indicated that he contracted—and successfully recovered from—COVID-19, Dkt. 75 at 5, which "undercuts the argument that he is particularly susceptible to extreme illness or death from COVID-19 . . . ." *Aqid*, 555 F. Supp. 3d at 282.  Moreover, Defendant has been vaccinated against COVID-19.  *See* Dkt. 82 at 8.  Defendant's vaccination status, when combined with the fact that the vaccine has been administered to many fellow inmates, vitiates concerns that he is particularly susceptible to COVID-19 because of his Type II diabetes.  *See Dawson v. United States*, No. 2:17-cr-61-2, 2021 WL 3609297, at *4 (E.D. Va. Aug 13, 2021) (citing the availability of the vaccine and the fact that defendant was "in an environment in which most of the inmates within his facility are already vaccinated" in concluding that defendant who had diabetes and hypertension did not have "circumstances so extraordinary" to warrant his release); https://www.bop.gov/coronavirus/ (showing that 2,488 inmates at Allenwood FCC have been fully vaccinated).  Defendant has a single risk factor—Type II diabetes—that makes him susceptible to severe illness if he is infected with COVID-19.  But the fact that he has successfully recovered from COVID-19 already and has

---

[4] Defendant also states that he "fears" that he has complications with his kidneys due to certain symptoms that may be indicative of kidney issues.  Dkt. 75 at 4.  But, beyond his personal speculation, there is no indication that he has been diagnosed with any sort of kidney disease or issue.

been vaccinated against COVID-19 undermines his argument that he is particularly susceptible to

COVID-19.[5]

Defendant has also not shown that he has a "particularized risk of contracting [COVID-19]

at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457 at *7 (E.D.

Va. April 10, 2020); *see id.* (collecting cases).  It appears that the risk of contracting COVID-19

at FCI Allenwood is currently relatively low.   *See* https://www.bop.gov/coronavirus/ (as of

December 14, 2022, FCI Allenwood only had 4 active COVID-19 cases among 1,060 inmates, a

.3% rate); *Hawthorne*, 2021 WL 1912382, at *2 (no particularized facility risk when defendant's

facility had 12 active cases among 1,492 inmates, a .8% rate).  While Defendant points to the

unfortunate fact that an inmate has died from COVID-19, Dkt. 75 at 6, that alone is not enough to

show that he has a heightened risk of contracting COVID-19 at his facility.  *See Hawthorne*, 2021

WL 1912382, at *2 ("Sadly, there has been one inmate death, but that alone does not detract from

the basic conclusion that the facility is managing the COVID-19 situation well."); *United States v.*

*Kenney*, No. 3:16-cr-143, 2021 WL 399724, at *2 (E.D. Va. Feb. 4, 2021) (defendant did not meet

"particularized facility risk component" of compassionate release test when defendant's facility

had 15 active cases of COVID-19 and one inmate death due to COVID-19).  Put simply, Defendant

has provided "no real evidentiary support" to show that he is particularly susceptible to contracting

---

[5] Defendant has also failed to provide any medical records to support his assertion that he
is particularly susceptible to COVID-19.  Without those medical records showing the precise
nature of his medical condition, treatment, symptoms, and medications, it is difficult for the Court
to determine whether he is particularly vulnerable to COVID-19 given his current situation.  *See*
*Dawson*, 2021 WL 3609297, at *4 ("[T]he Court cannot determine whether Petitioner is
particularly vulnerable to COVID-19 without any medical records to support his claims."); *United*
*States v. Clark*, Criminal No. 3:13-cr-163, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019)
(denying motion for compassionate release because the petitioner failed to supply medical records
to substantiate medical claims).

COVID-19 at FCI Allenwood. *United States v. Hawthorne*, No. 2:17-cr-61-2, 2021 WL 1912382, at *2 (E.D. Va. Aug. 13, 2021).

There are not "extraordinary and compelling reasons" warranting Defendant's release under 18 U.S.C. § 3582(c)(1)(A). *McCoy*, 981 F.3d at 274. The fact that he has Type II diabetes is not enough on its own to warrant release. And while his grievances with the quality and type of food at FCI Allenwood may be genuine, those are not properly before this Court in a § 3582 motion. Moreover, Defendant has offered little evidence to suggest that, given the current state of the COVID-19 pandemic, he is particularly susceptible to COVID-19 and that that risk is heightened at his particular facility. [6]

### III. CONCLUSION

Defendant has failed to establish that extraordinary and compelling reasons justify his release. Accordingly, Defendant's Motion for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 75) is DENIED. The Government's Motion for Leave to file a Surreply (Dkt. 85) is DENIED as MOOT.

IT IS SO ORDERED.

Alexandria, Virginia
January 11, 2023

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

---

[6] Because the Court finds that Defendant has not shown there are "extraordinary and compelling reasons" justifying his release, it does not address whether reducing Defendant's sentence would be "consistent with the applicable policy statements issued by the Sentencing Commission[,]" and "if the § 3553(a) sentencing factors merit a reduction." *McCoy*, 981 F.3d at 276 (citing 18 U.S.C. § 3582(c)(1)(A)).